IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIETRICH & ASSOCIATES, INC., <br> *Plaintiff,* <br><br> v. <br><br> OCTOBER THREE LLC, et al., <br> *Defendants.* | CIVIL ACTION <br> NO. 20-5002 |

**PAPPERT, J.**                                                                                  **January 27, 2022**

## MEMORANDUM

Dietrich & Associates, Inc. claims October Three LLC, October Three Consulting LLC and O3 Annuity Services LLC (collectively "October Three") tortiously interfered with its business relationships and employment agreements with its former employees John Neison, Jill Neison and Mark Unhoch.[1] The Court previously denied October Three's motion to dismiss D&A's claims as time barred. *Dietrich & Assocs., Inc. v. October Three LLC*, No. 20-5002, 2021 WL 1614399 (E.D. Pa. Apr. 26, 2021). October Three now moves for summary judgment on the statute of limitations defense. Whether D&A waited too long to bring its claims against October Three is no clearer after discovery than it was before and the Court denies the motion accordingly.

I

"The running of the statute of limitations is an affirmative defense."

---

[1] D&A's suit is related to and arises out of the same facts as *Dietrich & Associates, Inc. v. John Neison, et al.,* Civ. A. No. 18-5034 (E.D. Pa.).

*Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  Defendants would bear the burden of proof on the affirmative defense at trial and, on summary judgment, must "show that [they] ha[ve] produced enough evidence to support the findings of fact necessary to win."  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007).  When deciding whether summary judgment is appropriate, the Court "must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence."  *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).  It must determine whether October Three's evidence "is so one-sided that [it] must prevail as a matter of law" or "whether the evidence presents a sufficient disagreement to require submission to a jury . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

II

To prove its tortious interference claims, D&A has to show:  (1) an existing contractual or prospective contractual relation between it and a third party; (2)  October Three's purposeful action, specifically intended to harm the contractual relationship; (3)  the absence of privilege or justification; and (4) damages resulting from October Three's conduct.  *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).  In Pennsylvania, tortious interference claims must be brought within two years of accrual.  *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) (citing 42 Pa. Cons. Stat. § 5524).

"[A] statute of limitations begins to run only once a plaintiff can assert and

maintain an action." *CGB Occupational Therapy*, 357 F. 3d at 383; *see also Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (holding a cause of action accrues when the plaintiff could have "first maintained the action to a successful conclusion"). In the context of tortious interference, that does not happen "until, at least, the plaintiff suffers injury (i.e., 'actual legal damage') as a result of the [relevant] defendant's conduct." *CGB Occupational Therapy*, 357 F.3d at 384. D&A's claims against October Three accrued at "'the occurrence of the final significant event necessary to make [them] suable.'" *Id.* at 383 (quoting *Barnes v. American Tobacco Co.*, 161 F.3d 127, 136 (3d Cir. 1998)).

III

D&A filed this lawsuit on October 9, 2020. It maintains it did not know or have reason to know of its tortious interference claims until June 5, 2019, when Jeff Stevenson, October Three's President and CEO was deposed in D&A's action against its three former employees, whom D&A has dubbed the "Former Workers." (Pl.'s Opp'n Mem., ECF 20, at 6.) Stevenson testified that he instructed the Former Workers to direct their sales and marketing efforts toward D&A's clients and referral clients because their preexisting relationships would generate business for October Three. (Pl.'s Counterstmt. of Mat. Facts., ECF 20-1, ¶¶ 101-104.) October Three claims that correspondence between counsel shows D&A knew or reasonably should have known it could successfully maintain its tortious interference claims well before October 9, 2018, two years before D&A sued October Three.

3

A

"[T]here is no dispute that D&A learned in or around February 2018 that [Mark Unhoch, John Neison and Jill Neison] were employed by October Three and would be building a . . . business there that would compete with D&A for annuity placements on a going-forward basis." (Pl.'s Counterstmt. of Mat. Facts, ECF 20-1, ¶ 14.) Between February and May 2018, D&A's then-counsel, Louis Rosner, sent a series of cease and desist letters explaining D&A's belief that its Former Workers were unlawfully soliciting D&A's clients to divert business to October Three.[2] (*See* Defs.' Summ. J. Mot. Exs. 4, 6-9, and 11, ECF 18-2.) The second and third letters requested October Three's "assistance" in ensuring John and Jill Neison did not violate their contractual obligations to Dietrich. (*Id.*, Exs. 6-7.) D&A asked October Three to "strongly disavow" the Former Workers' solicitations and take "appropriate action" to ensure the Former Workers did not solicit business on behalf of October Three. (*Id.*, Exs. 8-9.) In the fourth letter, D&A's counsel agreed that litigation was "not the preferred alternative" and said he "appreciate[d] what appear[ed] to be an effort to share relevant concerns for discussion." (*Id.*, Ex. 11.) None of the letters accused October Three of undertaking any purposeful action to interfere with D&A's contracts and no response from October Three indicated it did as much. (*See, e.g., id.,* Ex. 10 ("[October Three] has not asked John Neison (or Jill Nieson, for that

---

[2] The first letter, addressed to John Nieson, was faxed to Stevenson. (Defs.' Summ. J. Mot., Ex. 4, ECF 18-2.) Subsequent letters were directed to October Three's current counsel after the letter to Stevenson "was referred to [his] law firm for response." (*Id.*, Ex. 5; *see also id.,* Exs. 6-9, 11.) He later wrote that his prior correspondence had been "on behalf of October Three . . . ." (*Id.*, Ex. 10 (May 10, 2018 Letter from Michael Pavlick to Rosner.)

4

matter) to engage in activity in violation of his employment agreement . . . .").

Defendants maintain there is only one "reasonable inference" to be drawn from D&A's cease and desist letters: "that Dietrich understood October Three to be 'in on it,' in one way, shape or form, with the Former Workers, and wanted October Three to put a stop to the alleged misconduct." (*Id.* at 18-19.) October Three also contends D&A suffered an "actual injury" from the Former Workers' "act of solicitation" itself. (Defs.' Mot., ECF 18-3 at 20.) In its view, D&A's claims against it accrued when D&A "lost the benefit of its bargain with the Former Workers" through Unhoch, John Neison and Jill Neison's solicitation efforts, "whether successful or not." (*Id.* at 21.) October Three also contends D&A suffered "actual damages" when it lost good will "by virtue of the Former Workers' allegedly improper solicitations." (*Id.*) Finally, October Three maintains D&A's claims against them accrued earlier than October 9, 2018 because it "could have proceeded in equity" to prevent unjustified interference with D&A's contracts even if it "had not suffered any pecuniary loss" by that date.[3] (*Id.* at 22.)

B

The cease and desist letters show only that D&A had suable claims against the Former Workers before October 9, 2018. October Three has not set forth enough evidence to show there is no material question of fact as to whether D&A suffered

---

[3] Defendants contend D&A "knew it had suffered pecuniary damages prior to October 9, 2018" because of an annuity placement October Three closed for Akin Gump. (Defs.' Mot., ECF 18-3 at 22-23.) However, there is no record evidence showing any October Three Defendant "intended to harm" D&A's relationship with Akin Gump. *Acumed LLC*, 561 F.3d at 212. Moreover, D&A responds that "Akin Gump is not one of the diverted placements for which D&A is suing October Three." (Pl.'s Opp'n Mem., ECF 20 at 12.)

an injury "as a result of" October Three's conduct by then. *CGB Occupational Therapy*, 357 F.3d at 384. While October Three may very well feel it is reasonable to infer that D&A knew or should have known that Defendants were "in on it," the Court at this stage must give the benefit of any "reasonable inferences" that can be drawn from the evidence to D&A as the non-moving party, not October Three. Moreover, even a "reasonable inference" that October Three was up to no good before October 9, 2018 is not enough for it to prevail on its affirmative defense at this stage. *See Halsey*, 750 F.3d at 287 ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.") (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir.1990)).

Once the facts are fleshed out at trial the jurors may decide that D&A could have first maintained its tortious interference claims to a successful conclusion before October 9, 2018. For now, the record evidence does not preclude reasonable jurors from finding that D&A did not have a suable claim against October Three until then. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

6